**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**EL DORADO DIVISION**

| | | |
|---|---|---|
| **CURT TOMLINSON,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:12-cv-01050-SOH** |
| **ERICK WIGGINS, BILL REISDORFF,** | § | |
| **AMERCABLE INCORPORATED, AND** | § | |
| **NEXANS INC.** | § | |
| | § | |
| *Defendants*. | § | |

---

### BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Respectfully submitted,

Dale S. Smart
State Bar No. 2006239
SMART & STONE, PLLC
315 E. Main Street
El Dorado, AR 71730
Telephone:  (870) 862-5565

Melissa M. Goodman
Texas State Bar No. 00790648
Arrissa K. Meyer
Texas State Bar No. 24060954
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:  214.651.5000

**ATTORNEYS FOR DEFENDANTS**
**ERICK WIGGINS, BILL REISDORFF,**
**AMERCABLE INCORPORATED**
**AND NEXANS INC.**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     FACTUAL BACKGROUND .............................................................................2

II.    STANDARD OF REVIEW .............................................................................5

III.   ARGUMENTS AND AUTHORITIES...........................................................6

     A.     Plaintiff's ADA/ACRA Claims Fail as a Matter of Law .........................................6

          1.     Plaintiff Cannot Establish a Prima Facie ADA/ACRA Discrimination Claim................................................................6

               a.     Plaintiff Cannot State a Failure to Accommodate Claim................6

               b.     Plaintiff Cannot Prevail on his Disparate Treatment Claim .........11

                    i.     Plaintiff cannot show that AmerCable terminated his employment on the basis of his alleged disability........11

                    ii.    AmerCable terminated Plaintiff's employment for legitimate nondiscriminatory reasons and Plaintiff cannot show that AmerCable's reasons are pretextual...........................................................................14

          2.     Plaintiff Cannot Establish a Prima Facie ADA/ACRA Retaliation Claim................................................................14

          3.     Plaintiff's ADA/ACRA Discrimination and Retaliation Claims Fail Because Defendants Have Articulated a Legitimate, Non-Discriminatory Reason for His Discharge, and Plaintiff Cannot Show that it is Pretextual .............................................................17

               a.     AmerCable terminated Plaintiff's employment for legitimate nondiscriminatory reasons .............................................17

               b.     Plaintiff cannot show Defendants' legitimate, non-discriminatory reason for terminating his employment is pretextual...........................................................................20

B.   Plaintiff Cannot Succeed on His FMLA Claims.......................................................23

    1.   Plaintiff Cannot State an FMLA Interference Claim.................................23

    2.   Plaintiff's FMLA Discrimination and Retaliation Claims Fail Because Plaintiff Cannot State a Prima Facie Case or Rebut Defendants' Legitimate, Non-Discriminatory Reason for Plaintiff's Termination..........................................................................................25

IV.   CONCLUSION.............................................................................................................27

CERTIFICATE OF SERVICE ................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................5

*Ballard v. Rubin*,
  284 F.3d 957 (8th Cir. 2002) ......................................................9

*Bass v. SBC Commc'n, Inc.*,
  418 F.3d 870 (8th Cir. 2005) .....................................................12

*Benson v. Northwest Airlines, Inc.*,
  62 F.3d 1108 (8th Cir. 1995) ...................................................6, 7

*Bloom v. Metro Heart Group of St. Louis, Inc.*,
  440 F.3d 1025 (8th Cir. 2006) .....................................................5

*Bradley v. Little Rock Wastewater Utility*,
  No. 12-1405, 2013 U.S. App. LEXIS 3076 (8th Cir. Feb. 14, 2013) ....................26

*Brooks v. Ameren*,
  345 F.3d 986 (8th Cir. 2002) .....................................................21

*Brown v. City of Jacksonville*,
  No. 4:10CV001637, 2012 U.S. Dist. LEXIS 23454 (E.D. Ark. 2012).....................27

*Burchett v. Target Corp.*,
  340 F.3d 510 (8th Cir. 2003) .....................................................10

*Butler v. Bloomington Public Schools*,
  No. 08-5196, 2010 U.S. Dist. LEXIS 10517 (D. Minn. Feb. 8, 2010) ...................8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)................................................................5

*Chappell v. Bilco Co.*,
  675 F.3d 1110 (8th Cir. 2012) ...................................................27

*Cravens v. Blue Cross and Blue Shield*,
  214 F.3d 1011 (8th Cir. 2000) ............................................9, 11, 17

*Dhyne v. Meiners Thriftway, Inc.*,
  184 F.3d 983 (8th Cir.1999) .....................................................22

*Duty v. Norton-Alcoa Proppants*,
  293 F.3d 481 (8th Cir. 2002) ......................................................6

*EEOC v. Convergys Customer Mgmt. Grp., Inc.*,
   491 F.3d 790 (8th Cir. 2007) ...................................................................................9

*EEOC v. Kohler*,
   335 F.3d 766 (8th Cir. 2003) ..................................................................12, 13, 14

*Fenney v. Dakota, Minnesota & Eastern R.R. Co.*,
   327 F.3d 707 (8th Cir. 2003) ................................................................................6, 7

*Haigh v. Gelita USA, Inc.*,
   632 F.3d 464 (8th Cir. 2011) .................................................................................20

*Henson v. Hawker Beechcraft Corp.*,
   No. 4:09CV00440, 2010 U.S. Dist. LEXIS 81535 (E.D. Ark. 2010)....................26

*Higgins v. Gonzales*,
   481 F.3d 578 (8th Cir. 2007) .................................................................................15

*Kiel v. Select Artificials, Inc.*,
   169 F.3d 1131 (8th Cir. 1999) .........................................................................16, 20

*Kratzer v. Rockwell Collins, Inc.*,
   398 F.3d 1040 .................................................................................................8, 10

*Lake v. Yellow Transp., Inc.*,
   596 F.3d 871 (8th Cir. 2010) .................................................................................21

*Littleton v. Pilot Travel Centers*,
   568 F.3d 641 (8th Cir. 2009) .................................................................................15

*Lowenstein v. Catholic Health East*,
   820 F. Supp. 2d 639 (E.D. Pa. 2011) ....................................................................24

*Lowery v. Hazelwood School Dist.*,
   244 F.3d 654 (8th Cir. 2001) .................................................................................12

*Mathews v. Trilogy Commc'ns, Inc.*,
   143 F.3d 1160 (8th Cir. 1998) ...............................................................................22

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986).................................................................................................5

*McBurney v. Stew Hansen's Dodge City, Inc.*,
   398 F.3d 998 (8th Cir. 2005) .................................................................................27

*Miner v. Bi-State Dev. Agency*,
   943 F.2d 912 (8th Cir. 1991) .................................................................................20

- iv -

*Nicholson v. Pulte Homes Corp.*,
    690 F.3d 819 (7th Cir. 2012) ....................................................................26

*Peebles v. Potter*,
    354 F.3d 761 (8th Cir. 2004) ......................................................................6

*Pesterfield v. Tennessee Valley Authority*,
    941 F.2d (6th Cir. 1991) .............................................................................8

*Phillips v. Mathews*,
    547 F.3d 905 (8th Cir. 2008) ....................................................................23

*Pulczinski v. Trinity Structural Towers Inc.*,
    691 F.3d 996 (8th Cir. 2012) ...............................................................23, 24

*Putman v. Unity Health System*,
    348 F.3d 732 (8th Cir. 2003) ....................................................................26

*Quinn v. St. Louis Cnty.*,
    653 F.3d 745 (8th Cir. 2011) ....................................................................25

*Reach v. AlliedSignal Inc.*,
    184 F. Supp. 2d 932 (W.D. Mo. 2000) ....................................................25

*Rehrs v. Iams Co.*,
    486 F.3d 353 (8th Cir. 2007) ....................................................................10

*Schoffstall v. Henderson*,
    223 F.3d 818 (8th Cir. 2000) ....................................................................24

*Scroggins v. Univ. of Minn.*,
    221 F.3d 1042 (8th Cir. 2000) ..................................................................21

*Shaver v. Ind. Stave Co.*,
    350 F.3d 716 (8th Cir. 2003) ....................................................................24

*Sherman v. Runyon*,
    235 F.3d 406 (8th Cir. 2000) ....................................................................22

*Sisk v. Picture People, Inc.*,
    669 F.3d 896 (8th Cir. 2012) ....................................................................23

*Smith v. Allen Health Sys., Inc.*,
    302 F.3d 827 (8th Cir. 2002) ....................................................................26

*Sprenger v. Fed. Home Loan Bank of Des Moines*,
    253 F.3d 1106 (8th Cir. 2001) .............................................................21, 22

*Stanback v. Best Diversified Products, Inc.*,
   180 F.3d 903 (8th Cir.1999) ...................................................................11

*Stewart v. Ind. School Dist. No. 196*,
   481 F. 3d 1034 (8th Cir. 2007) ................................................16, 17, 22

*Stuart v. General Motors Corp.*,
   217 F.3d 621 (8th Cir. 2000) ...................................................................21

*Sullivan-Robinson v. Ark. Parole Bd.*,
   No. 4:11CV00140, 2010 U.S. Dist. LEXIS 154621 (E.D. Ark. Oct. 29, 2012)...............25, 26

*Throneberry v. McGehee Desha County Hosp.*,
   403 F.3d 973 (8th Cir. 2005) ...................................................................26

*Torgerson v. City of Rochester*,
   643 F.3d 1031 (8th Cir. 2011) ...................................................................5

*Wierman v. Casey's General Stores*,
   638 F.3d 984 (8th Cir. 2011) ...................................................................25

*Wilder v. Southeastern Public Serv. Auth.*,
   869 F. Supp. 409 (E.D. Va. 1994) .............................................................8

*Wilking v. County of Ramsey*,
   153 F.3d 869 (8th Cir. 1998) ...................................................................21

## STATUTES

42 U.S.C. § 2615(a)(1)....................................................................................23

42 U.S.C. § 12111(9) .....................................................................................10

42 U.S.C. § 12112(a) ....................................................................................11

Americans with Disabilities Act ................................................................ passim

Ark. Code Ann. § 16-123-105(c) ..................................................................6

Family Medical Leave Act............................................................................ passim

## OTHER AUTHORITIES

Fed. R. Civ. P. 56.....................................................................................2, 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**EL DORADO DIVISION**

| | | |
|---|---|---|
| **CURT TOMLINSON,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:12-cv-01050-SOH** |
| **ERICK WIGGINS, BILL REISDORFF,** | § | |
| **AMERCABLE INCORPORATED, AND** | § | |
| **NEXANS INC.** | § | |
| | § | |
| *Defendants*. | § | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Erick Wiggins ("Wiggins"), Bill Reisdorff ("Reisdorff"), AmerCable Incorporated ("AmerCable" or the "Company"), and Nexans Inc. ("Nexans") (collectively, "Defendants") submit this brief in support of their motion for summary judgment on Plaintiff Curt Tomlinson's ("Plaintiff") claims against them.

Plaintiff claims that Defendants interfered with Plaintiff's rights under the Family Medical Leave Act ("FMLA"), terminated his employment in retaliation for requesting FMLA leave, discriminated against him in violation of the Americans with Disabilities Act ("ADA") and the Arkansas Civil Rights Act ("ACRA") by refusing to accommodate his alleged disability or engage in a good faith interactive process, and retaliated against him in violation of the ADA and the ACRA for requesting leave as an accommodation for his alleged disability.

Defendants are entitled to summary judgment on Plaintiff's ADA, ACRA, and FMLA claims in their entirety. Plaintiff's ADA/ACRA discrimination claim fails as a matter of law because he cannot show that he requested a reasonable accommodation or that Defendants denied him one, nor can he identify any similarly situated non-disabled individuals who were treated more favorably than him. Plaintiff's ADA/ACRA retaliation claim fails because he

cannot show any causal connection between his alleged protected activity and his termination from employment – it is undisputed that the recommendation to terminate Plaintiff's employment came from his manager, who had no knowledge of Plaintiff's alleged disability or his alleged request for an accommodation, and it was based on conduct that occurred before his alleged protected activity.  Additionally, Plaintiff's ADA/ACRA discrimination and retaliation claims fail because AmerCable terminated Plaintiff's employment for legitimate, non-discriminatory reasons that Plaintiff cannot rebut.

For these same reasons, Plaintiff's FMLA discrimination and retaliation claims also fail as a matter of law.  Nor can Plaintiff state an interference claim – he admits he was not denied any leave under the FMLA.  Therefore, based on Federal Rule of Civil Procedure 56, Defendants move for summary judgment on all of Plaintiff's claims against them.[1]

## I.     FACTUAL BACKGROUND

AmerCable manufactures flexible electrical power and control cables for harsh operating environments, including oil and gas drilling and production, surface and underground mining, renewable energy sources, and general industrial settings.  AmerCable operates a 500,000 square foot manufacturing facility in El Dorado, Arkansas, where Plaintiff worked.  AmerCable hired Plaintiff on October 6, 2008 as an electrical instrumentation technician in the maintenance department.  Plaintiff's primary job duty was maintaining AmerCable's two electronic software

---

[1] Defendant Reisdorff also moved for summary judgment on the bases that (i) Reisdorff cannot be held individually liable for discriminatory acts under the ACRA, (ii) Reisdorff lacked sufficient authority to be individually liable as an "employer" under the FMLA, (iii) Reisdorff lacked knowledge of Plaintiff's alleged disability, FMLA leave, or alleged protected activity, and (iv) Reisdorff recommended that AmerCable terminate Plaintiff's employment before Plaintiff engaged in his alleged protected activity.  *See* Defendant Reisdorff's Motion for Summary Judgment and Brief in Support filed concurrently with this Motion and Brief in Support.  Defendant Nexans moved for summary judgment on the additional grounds that (i) Nexans is not AmerCable's successor, and (ii) it is undisputed that Nexans never employed Plaintiff or took adverse action against him.  *See* Defendant Nexans's Motion for Summary Judgment and Brief in Support filed concurrently with this Motion and Brief in Support.  Because these additional grounds for summary judgment are specific to Defendants Reisdorff and Nexans, and for clarity, Reisdorff and Nexans filed separate motions for summary judgment and supporting briefs addressing those reasons separately.  All Defendants move for summary judgment based on the grounds in Defendants' Motion for Summary Judgment and this Brief in Support.

systems, the FACTS system and the Sikora x-ray system. The FACTS system is installed on multiple production lines at AmerCable, and the Sikora x-ray system allows the line operators to examine the cable as it is produced on the production lines. Plaintiff reported to the manager of the maintenance department, Bill Reisdorff, Plant Engineer Manager. AmerCable operates it production lines 24 hours per day seven days per week.

Plaintiff began a medical leave for depression on August 12, 2010. Plaintiff told Wiggins, Human Resources Director, that issues in his department were affecting him emotionally and physically, but he never shared this belief with Reisdorff or informed Reisdorff that his leave was for depression. On August 20, 2010, Plaintiff notified Wiggins, Reisdorff and a co-worker that he was extending his medical absence until September 5. AmerCable granted both his request for leave and his request to extend his leave. Reisdorff was not involved in this process. Human Resources followed up with Plaintiff to ensure his leave qualified as FMLA leave. Plaintiff failed to provide the required FMLA paperwork upon his return, but a human resources employee eventually secured the completed FMLA paperwork from Plaintiff's doctor.

In May 2011, the FACTS system on the Cat-B production line began having significant operational problems. Despite Plaintiff's efforts, he could not resolve the software issues. As a result, the Cat-B line shut down and production ceased. Therefore, the Company brought in representatives from FACTS to analyze and resolve the software issues on two separate occasions, May 10-13 and May 21-24, 2011. When the FACTS representatives came the first time, Reisdorff instructed Plaintiff to shadow the representatives the entire time they were at AmerCable, so Plaintiff could learn from them and assist them. Reisdorff was dissatisfied with Plaintiff's performance while the FACTS representatives were on site. Indeed, when a FACTS representative visited AmerCable for the second time, Plaintiff failed to come into work over the

weekend, May 21-22, 2011.  This, despite (1) Reisdorff's prior instructions, (2) the Cat-B line was shut down (production normally operates over the weekend), (3) FACTS was admittedly Plaintiff's responsibility, and (3) Plaintiff's understanding that it was imperative that the Company get the line fixed.  Instead, Plaintiff's co-worker came in over the weekend and performed Plaintiff's duties.

Incredibly, when Plaintiff returned to work on Monday, May 23, 2011, he asked Reisdorff, via email, if he could take several days of vacation that week to go to Florida.  He made this request even though the issues with the Cat-B line had not been resolved and he was responsible for the system causing the problems.  Reisdorff responded that due to the issues with the Cat-B line, he could not approve the request unless it was an emergency.  Plaintiff knew the Cat-B FACTS issues were his responsibility, and admits that there was no emergency that required him to take vacation days that week.

After Reisdorff received Plaintiff's vacation request, Reisdorff recommended to Wiggins that day that the Company terminate Plaintiff's employment for his failure to follow instructions and adequately perform his job duties.  After consideration, Wiggins decided to terminate Plaintiff's employment and began the termination process.  Before they could meet with Plaintiff, he took off work.

On May 25, 2011, Plaintiff left work early, without telling anyone, for a doctor's appointment.  Later that day, Plaintiff emailed Wiggins: "doctor beville gave me a new prescription for anexity [sic] and i wont be back in today i cant drive feeling this way." (Ex. 21).  Plaintiff did not send the email to Reisdorff, nor did Wiggins share the email with Reisdorff.  Plaintiff took off work May 26 and 27, 2011 (May 30, 2011 was Memorial Day).  When Plaintiff

returned to work on May 31, 2011, Wiggins and Reisdorff met with Plaintiff.  In that meeting, Wiggins informed Plaintiff that the Company was terminating his employment.

## II.    STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, then non-movant "must do more than simply show that there is some metaphysical doubt as to the material fact," and must come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-87 (1986).  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of the judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If the facts alleged by non-movant, when viewed in the light most favorable to his case, would not allow a reasonable jury to find in his favor, then summary judgment should be granted in favor of the movant.  *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006).  Summary judgment is "designed for 'every action,'" and there is no "discrimination case exception" to the application of summary judgment.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).

This supporting brief and the accompanying motion demonstrate that pursuant to the legal standards set forth above, Defendants are entitled to summary judgment with respect to each of Plaintiff's claims addressed herein.

## III.   ARGUMENTS AND AUTHORITIES

Based on the law and the evidence, Plaintiff cannot create any material fact issue on his ADA, ACRA, and FMLA claims.   Therefore, summary judgment is warranted on all of his claims.

**A.   Plaintiff's ADA/ACRA Claims Fail as a Matter of Law.**

Plaintiff asserts both discrimination and retaliation claims under the ADA and ACRA. Courts "analyze a disability claim presented under the ACRA using the same principles employed in analyzing claims under the [ADA]." *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002); *see* Ark. Code Ann. § 16-123-105(c).   Summary judgment is warranted on Plaintiff's ADA/ACRA claims for several reasons.

### 1.   Plaintiff Cannot Establish a Prima Facie ADA/ACRA Discrimination Claim.

In this Circuit, an ADA/ACRA discrimination claim may be based on two separate liability theories: (1) failure to accommodate, and (2) disparate treatment.  *See Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004); *Fenney v. Dakota, Minnesota & Eastern R.R. Co*., 327 F.3d 707, 712 n.6 (8th Cir. 2003).   Plaintiff alleges both theories.   (Plaintiff's Complaint at ¶ 23-24). He cannot succeed on either theory.

#### a.   Plaintiff Cannot State a Failure to Accommodate Claim.

Plaintiff's failure to accommodate claim is fatally flawed – Plaintiff cannot identify <u>any</u> specific reasonable accommodation that he requested and was denied.   In analyzing a failure to accommodate claim, a plaintiff "*at all times retains the burden of persuading the trier of fact that he has been the victim of illegal discrimination due to his disability*."  *Benson v. Northwest Airlines, Inc*., 62 F.3d 1108, 1112 (8th Cir. 1995).   Under this analysis, Plaintiff must first make a facial showing that he has a disability and that he suffered an adverse employment action. Then

he must make a facial showing that he is a "qualified individual," meaning he possesses the requisite skill, education, experience, and training for his position, and is able to perform the essential job functions, with or without reasonable accommodation. *Fenney*, 327 F.3d at 712. If Plaintiff demonstrates he cannot perform the essential functions of the job without an accommodation, he must only make a "facial showing that a reasonable accommodation is possible." *Benson*, 62 F.3d at 1112. "The burden of production [then] shifts to the employer to show that it is unable to accommodate the employee." *Id*.

Plaintiff cannot meet his burden as a matter of law.  First, Plaintiff <u>admits</u> that AmerCable did not deny him any request for leave:

> 14 Q And AmerCable did not deny any request for
> 15 leave from you, correct?
> 16 A Yes.
> 17 Q Yes, that's correct?
> 18 A Correct.

***

> 18 Q Well, they allowed you to take leave, right?
> 19 A Yes, when I put in for the leave.

(Ex. 3, Plaintiff's Depo. at 131, 182).  To the contrary, AmerCable granted him every leave request he made – it even allowed him leave when he did not ask for FMLA leave or give advance notice of his absence.  (Ex. 3, Plaintiff's Depo. at 131, 190).

Second, Plaintiff never requested an accommodation from anyone at AmerCable for his alleged disability:

> 9 Q And you never requested an accommodation from
> 10 anyone at AmerCable for your alleged disability?
> 11 MR. SCURLOCK: Object to the form. Go
> 12 ahead and answer the question.
> 13 A No, I didn't.

(Ex. 3, Plaintiff's Depo. at 199).  Plaintiff further admits he "never put anything in writing to AmerCable requesting a specific accommodation."  (Ex. 3, Plaintiff's Depo. at 198).  These admissions are fatal to Plaintiff's failure to accommodate claim.  *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1045 (analysis of employer's good faith engagement in the interactive process unnecessary where plaintiff failed to request an accommodation); *Butler v. Bloomington Public Schools*, No. 08-5196, 2010 U.S. Dist. LEXIS 10517, at *22 (D. Minn. Feb. 8, 2010) ("there is no evidence that [plaintiff] requested any accommodation, which is fatal to his claim.").

Third, Plaintiff's hoped for accommodation – a stress free work environment – is not a reasonable accommodation as a matter of law.

```
21 Q So you wanted a stress free environment?
22 MR. SCURLOCK: Object to the form. Go
23 ahead and answer the question.
24 A Yes...
```

(Ex. 3, Plaintiff's Depo. at 187).  The federal antidiscrimination laws do not guarantee a stress-free work environment.  *Wilder v. Southeastern Public Serv. Auth.*, 869 F. Supp. 409, 418 n. 6 (E.D. Va. 1994).  Therefore, it is unreasonable to require an employer to transfer an employee to a "virtually stress-free environment and immunize him from any criticism in order to accommodate his disability."  *Pesterfield v. Tennessee Valley Authority*, 941 F.2d at 437, 442 (6th Cir. 1991).

Fourth, although Plaintiff made inquiries about other opportunities at AmerCable, he never applied for or discussed any specific position.  (Ex. 3, Plaintiff's Depo. at 69-70 ("Any position that you applied for?"  "No.  I never applied."), 107-108; *see also* Exs. 6-9).  Indeed, most of his inquiries were regarding positions that did not exist at AmerCable or were not open. (*See* Exs. 6-9; Ex. 3, Plaintiff's Depo. at 73-74, 141-43, 156).  For example:

```
23 Q You weren't aware of any specific opening in
24 South Africa?
25 A No, there wasn't. It was just that I had.....
1 There was talk about that being a potential for a
new
2 area to get into, and I just thought, you know, I
would
3 try and say, look, you know, if that was a new area
4 that maybe I could try and help, so I was just
trying
5 to ask or bring up something if there was any
6 potential, so other than that, no, I never heard any
7 positions.
```

(Plaintiff's Depo. at 140-41).   An employer is not required to create a new position as an accommodation; a disabled employee must seek an existing, and vacant, position within the company.  *Cravens v. Blue Cross and Blue Shield*, 214 F.3d 1011, 1019 (8th Cir. 2000).

Further, Plaintiff never informed AmerCable that he wanted to transfer to another position as an accommodation for his alleged disability.  *Ballard v. Rubin*, 284 F.3d 957, 962 (8th Cir. 2002) ("the notice must nonetheless make clear that the employee wants assistance for his or her disability.  In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability."   The employee "must provide relevant details of his disability and, if not obvious, the reason that his disability requires an accommodation.")  A disabled employee must initiate the accommodation-seeking process by making his employer aware of the need for an accommodation.  *EEOC v. Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d 790, 795 (8th Cir. 2007).  Because Plaintiff did not do so, this dooms his failure to accommodate claim.

Even assuming he had done so, Plaintiff ended the process after Bob Hogan, then AmerCable's Chief Executive Officer, responded to one of Plaintiff's inquiries about opportunities with questions for Plaintiff's consideration and instructions that Plaintiff follow up with Reisdorff and Wiggins.  Plaintiff did nothing - he did not respond to Hogan, and he did not

follow up with Reisdorff or Wiggins.  (Ex. 3, Plaintiff's Depo. at 144).  Since Plaintiff ended the discussion, he cannot state a failure to accommodate claim based on his inquiries.  *See Kratzer*, 398 F.3d at 1045 (no failure to accommodate where "breakdown in interactive process" was employee's fault).

Nor does Plaintiff's May 25, 2011, email support his failure to accommodate claim. Plaintiff emailed Wiggins that he was not coming back into work that day because his doctor gave him a new prescription and asked Wiggins to "please help me be able to get into [sic] a field service position i cant keep working in a department where i am not wanted..."  (Ex. 21). Assuming this email provided the necessary information to be a request for a transfer as an accommodation, it does not support Plaintiff's claim.  Reassignment is an accommodation of last resort.  *Burchett v. Target Corp.*, 340 F.3d 510, 517 (8th Cir. 2003).  The very prospect of reassignment does not even arise unless accommodation within the employee's current position would impose an undue hardship on him.  *See* 42 U.S.C. § 12111(9); *Burchett*, 340 F.3d at 517. Plaintiff cannot demonstrate that he could not be accommodated in his current position.  The Company had already reasonably accommodated Plaintiff by granting all of his requests for leave.  (Ex. 3, Plaintiff's Depo. at 131, 182).  Additionally, Wiggins told Plaintiff he could come to Wiggins, rather than Reisdorff, with any complaints about his manager and coworkers, and Wiggins would help resolve the problems.  (Ex. 3, Plaintiff's Depo. at 102-03).  Although the reasonable accommodations granted by AmerCable may not have been Plaintiff's first choice, any accommodation that is reasonable is sufficient for purposes of compliance with the ADA. *Rehrs v. Iams Co.*, 486 F.3d 353, 359 (8th Cir. 2007).  Further, Plaintiff did not request any specific accommodation from anyone at AmerCable.  (Ex. 3, Plaintiff's Depo. at 199).

In sum, because Plaintiff has failed to demonstrate that any of his alleged requests qualified as requests for reasonable accommodations or that the Company failed to grant any specific request for reasonable accommodation, Defendants are entitled to summary judgment on Plaintiff's failure to accommodate claim as a matter of law.

### b.    Plaintiff Cannot Prevail on his Disparate Treatment Claim.

Plaintiff contends that AmerCable terminated his employment because it did not want to accommodate his alleged disability.  (Ex. 3, Plaintiff's Depo. at 169-170)  To state a prima facie discrimination case, Plaintiff must show: (1) that he has a disability as defined in the Act;[2] (2) that he is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) that he has suffered an adverse employment action on the basis of his disability.  42 U.S.C. § 12112(a); *see also Cravens*, 214 F.3d at 1016.  If a plaintiff does so – which Tomlinson does not and cannot do here –the Company "must then rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Id*. at 1135.  If the employer does this, then "the burden of production shifts back to the plaintiff to demonstrate that the employer's non-discriminatory reason is pretextual." *Id*.; s*ee, e.g., Stanback v. Best Diversified Products, Inc*., 180 F.3d 903, 908 (8th Cir.1999). Plaintiff's discrimination claim fails under each prong of this analysis.

### i.    *Plaintiff cannot show that AmerCable terminated his employment on the basis of his alleged disability.*

Plaintiff cannot point to any evidence that AmerCable terminated his employment because it did not want to accommodate his disability.  As explained above, Plaintiff cannot identify any specific reasonable accommodation that Defendants failed to make.  Instead, Plaintiff opines that Defendants did not want to give him a stress free environment, so they

---

[2] For the purposes of this Motion for Summary Judgment, Defendants do not dispute that Plaintiff has a disability.

terminated his employment.  (Ex. 3, Plaintiff's Depo. at 170, 187, 197-200).  His evidence to support his claim?   "They fired me."   (Ex. 3, Plaintiff's Depo. at 182).   Reisdorff, who recommended Plaintiff's discharge, did not even know about Plaintiff's disability, and no one at AmerCable said anything to Plaintiff about his alleged disability.  (Ex. 3, Plaintiff's Depo. at 188; Ex. 4, Reisdorff Depo. at 16).  Plaintiff's unsupported allegation of discrimination does not create a fact issue on his claim.  *Bass v. SBC Commc'n, Inc.*, 418 F.3d 870, 873 (8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor.").

Plaintiff contends that Defendants treated nondisabled employees more favorably than him.  Plaintiff bears the evidentiary burden of proving that he was similarly situated to the employees whose treatment he compares to his own.  *Lowery v. Hazelwood School Dist.*, 244 F.3d 654, 659 (8th Cir. 2001).  Whether employees are similarly situated depends on the nature of the employment relationships, the relevant decision-makers, and the nature of the employees' misconduct.  *Id.*  Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.  *EEOC v. Kohler*, 335 F.3d 766, 776 (8th Cir. 2003).

Plaintiff's disparate treatment claim does not even get out of the starting gate – he cannot identify any similarly situated non-disabled individuals who were treated more favorably than him.   Rather, Plaintiff only makes generalized allegations about "people" at AmerCable. According to Plaintiff, he knows "of people [at AmerCable] that went through illnesses and they weren't fired and missed any time off and there was accommodations made to them, so that's all I know personally…"  (Ex. 3, Plaintiff's Depo. at 194).  Plaintiff has identified one individual,

Dave Daniels, "that had illness that they moved him from the job he was at into a different job, and then the company even bought a golf cart for him to ride around in…just to accommodate his illness," but there is no evidence that this employee is similarly situated to Plaintiff.  (Ex. 3, Plaintiff's Depo. at 195).  Not only are Plaintiff's vague, unsupported allegations insufficient to create a material fact issue, but his testimony actually *underscores* Defendants' entitlement to summary judgment on his disability discrimination claims as it shows Defendants did not discriminate against disabled individuals.  *Kohler*, 335 F.3d at 776.

In another lame effort to show disparate treatment, Plaintiff speculates that "people who are not disabled regularly receive FMLA leave, yet are not terminated."  (Ex. 3, Plaintiff's Complaint ¶ 25).  But he cannot identify anyone:

```
17 Q Well, let me ask it this way. Are you aware
18 of anyone that is not disabled or was not disabled
at
19 AmerCable, yet, regularly received FMLA leave and
were
20 not terminated?
21 MR. SCURLOCK: Object to the form. Go
22 ahead and answer the question.
23 A I knew people that took off a lot between
24 their medical and families' medical, but I don't
25 know I do not know if they used FMLA.
1 Q Right. And you wouldn't know the details of
2 that FMLA leave, right?
3 A Right.
4 Q Or leave?
5 A Right.
6 Q And would you know the details of whether
7 someone is disabled or not?
8 A Not unless it was an obvious disability or
9 someone told me they had a disability.
10 Q And you wouldn't know the details as to why
11 AmerCable accommodated a disability or not, right?
12 MR. SCURLOCK: Object to the form. Go
13 ahead and answer the question.
14 A No. I wouldn't.
15 Q Okay. Are you aware of anyone who made
```

```
16 complaints regularly at AmerCable and received
FMLA,
17 yet, were not terminated?
18 A I don't know of anybody personally.
```

(Ex. 3, Plaintiff's Depo. at 207-08). Vague references to other employees who received accommodations or FMLA leave without being discharged do not satisfy Plaintiff's prima facie burden. Plaintiff has provided no evidence that these "people" were similarly situated to him in terms of their positions, their supervisors, or whether they engaged in similar misconduct. As such, they cannot be considered appropriate comparators for a disparate treatment analysis. *Kohler*, 335 F.3d at 776. Because he failed to present a single situation in which a non-disabled similarly situated employee had similar performance problems and was treated more favorably, Plaintiff's disparate treatment allegations fail to create an inference of discrimination.

> ii.     *AmerCable terminated Plaintiff's employment for legitimate nondiscriminatory reasons and Plaintiff cannot show that AmerCable's reasons are pretextual.*

Even assuming that Plaintiff could state a prima facie disparate treatment case, his claim cannot survive summary judgment because AmerCable has articulated a legitimate nondiscriminatory reason for his termination from employment which Plaintiff cannot rebut. For brevity, this basis is discussed in Section 3 below, as this basis warrants summary judgment on Plaintiff's other claims as well.

### 2.     Plaintiff Cannot Establish a Prima Facie ADA/ACRA Retaliation Claim.

Plaintiff also contends that Defendants retaliated against him in violation of the ADA/ACRA by terminating his employment because he requested an accommodation. This claim fares no better than his discrimination claim.

Plaintiff cannot state a prima facie retaliation claim under the ADA or ACRA because he cannot establish a causal connection between his alleged protected activity and his termination

from employment.  To establish a prima facie retaliation claim under the ADA/ACRA, Plaintiff must establish that: (1) he engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse; and (3) the materially adverse action was causally linked to the protected conduct.  *Higgins v. Gonzales*, 481 F.3d 578, 589 (8th Cir. 2007).

As fully explained in Defendant Reisdorff's Motion for Summary Judgment and Brief in Support, it is undisputed that Reisdorff, who made the recommendation to terminate Plaintiff's employment, had <u>no</u> knowledge of Plaintiff's alleged protected activity or disability.  (Ex. 3, Plaintiff's Depo. at 94, 188; Ex. 4, Reisdorff's Depo. at 16).  Plaintiff <u>admits</u> that "[n]o one but HR knew that [he] had this problem…[he] never told Mr. Reisdorff [he] had a disability."  (Ex. 3, Plaintiff's Depo. at 188).  Reisdorff confirmed his lack of knowledge when he testified that he never knew Plaintiff suffered from anxiety and Wiggins never discussed Plaintiff's condition with him.  (Ex. 4, Reisdorff's Depo. at 16).  In fact, when asked if he knew why Plaintiff had been to the doctor before May 25, 2011, Reisdorff replied, "He had shoulder surgery…I know that," referring to FMLA leave Plaintiff took in February 2010 – demonstrating no knowledge of Plaintiff's issues with depression in August 2010.  (Ex. 4, Reisdorff's Depo. at 15).  Indeed, the first time Reisdorff learned of Plaintiff's May 25 email was Reisdorff's deposition.  (Ex. 4, Reisdorff's Depo. at 15-16, 21).  Although Wiggins was aware of Plaintiff's alleged disability and ultimately adopted Reisdorff's recommendation, Plaintiff's inability to show that Reisdorff had actual or constructive knowledge of his alleged protected activity defeats Plaintiff's claim as a matter of law.  *See Littleton v. Pilot Travel Centers*, 568 F.3d 641, 645 (8th Cir. 2009) (ACRA retaliation claim failed for lack of causal connection where individual initially recommending discipline had no knowledge of protected activity).

Plaintiff may claim that the temporal proximity between his May 25 email and his termination from employment establishes the requisite causal connection for his prima facie case. More than temporal proximity, however, is generally needed to show a causal link. *Kiel*, 169 F.3d at 1136. In this case, the temporal proximity is easily explained because the events leading to Plaintiff's termination occurred shortly before Plaintiff's alleged protected activity. Reisdorff recommended to Wiggins that the Company terminate Plaintiff's employment after Plaintiff (1) failed to come into work over the weekend (May 21 – 22) with the FACTS representative, and (2) despite the problems with the Cat-B line caused by FACTS – his responsibility, Plaintiff sent Reisdorff an email on May 23, 2011 requesting vacation that week to go to Florida. (Ex. 3, Plaintiff's Depo. at 161; Ex. 20). After receiving Plaintiff's vacation request, Reisdorff, already frustrated with Plaintiff's performance during the visits by the FACTS representatives, recommended to Wiggins on May 23, 2011 that the Company terminate Plaintiff's employment "for lack of job performance and following directions." (Ex. 4, Reisdorff's Depo at 18-19). That Plaintiff was not actually terminated until several days later, after he sent his May 25 email, is immaterial because Reisdorff made the recommendation before the alleged protected activity occurred. *Stewart v. Ind. School Dist. No. 196*, 481 F. 3d 1034, 1044 (8th Cir. 2007) ("alleged retaliation which precedes protected conduct cannot logically be used to show causation because a prior event cannot be caused by a later event"). For these reasons, Plaintiff's prima facie case of ADA/ACRA retaliation fails for lack of a causal connection.

**3.      Plaintiff's ADA/ACRA Discrimination and Retaliation Claims Fail Because Defendants Have Articulated a Legitimate, Non-Discriminatory Reason for His Discharge, and Plaintiff Cannot Show that it is Pretextual.**

Even assuming that Plaintiff could establish prima facie discrimination and retaliation claims, summary judgment is still warranted on his claims because Defendants terminated Plaintiff's employment for a legitimate, non-discriminatory reason which Plaintiff cannot rebut. The traditional *McDonnell Douglas* burden-shifting analysis applies in analyzing discrimination and retaliation claims under the ADA and ACRA.  *Stewart*, 481 F.3d at 1042-43; *Cravens*, 214 F.3d at 1016.   Under this analysis, a plaintiff bears the burden of proving a prima facie case of discrimination/retaliation (which he has not done), and if he does so, then the defendant must articulate a legitimate nondiscriminatory reason for its employment action.  Plaintiff must then show that the defendant's articulated reason is pretextual.  If a plaintiff fails at any step of the analysis, summary judgment is warranted on his claims.

**a.      AmerCable terminated Plaintiff's employment for legitimate nondiscriminatory reasons.**

AmerCable terminated Plaintiff's employment because he failed to follow his manager's instructions and perform his job duties.  (Ex. 4, Reisdorff's Depo. at 18-19; Ex. 5, Wiggins's Depo. at 32-33, 36-37).  Plaintiff's position was crucial to the Company because if the FACTS system went down, the production line went down as well, which could prevent AmerCable from fulfilling customer orders.  (Ex. 3, Plaintiff's Depo. at 29, 32).  AmerCable's production lines operate 24 hours per day.  (Ex. 3, Plaintiff's Depo. at 29).

In May 2011, the Cat-B production line stopped functioning as a result of problems with the FACTS system.  (Ex. 3, Plaintiff's Depo. at 145).  Plaintiff fully understood that maintaining the FACTS system was his "primary job duty."  (Ex. 3, Plaintiff's Depo. at 27).

```
11 Q And you were the only one at Amercable who
12 worked on the Facts system, the electronic aspect
of it
13 and the electrical aspect, right?
14 A Yes.
15 Q So if the line went down at any time, were you
16 the person that they were to call?
17 A Yes.
18 Q And you were the person responsible for
19 getting that fixed?
20 A Yes.
```

                                  ***

```
2 Q And you were the point person for getting the
3 Facts system up and running?
4 A Yes.
```

(Ex. 3, Plaintiff's Depo. at 29-30).  Because the FACTS problems with the CAT-B line were not

fixed, the Company brought in representatives from FACTS to address the problems.  (Ex. 3,

Plaintiff's Depo. at 150).   Before the FACTS representatives arrived, Reisdorff instucted

Plaintiff to remain with them at all times:

```
18 ... Mr. Reisdorff told you that he
19 wanted you to shadow those Facts representatives
the
20 entire time they were at the ....
21 A I was with them at the time.
22 Q Object. Let me finish my question, okay?
23 A Uh huh.
24 Q He told you he wanted you to shadow those
25 Facts representatives the entire time they were at
1 AmerCable, right?
2 A Yes.
3 Q Because he wanted you to learn from them,
4 right?
5 A Yes.
6 Q And he wanted you to learn everything you
7 could about the Facts system from them while they
were
8 there, right?
9 A Yes.
10 Q And he, also, told you he wanted you to be
11 able to assist them with whatever they needed while
```

- 18 -

```
12 they were there?
13 A Yes.
14 Q And that was your responsibility?
15 A Yes.
16 Q Okay. So you understood you were supposed to
17 be with them, any Facts representatives, the entire
18 time they were there?
19 A Yes.
20 Q Shadowing them regardless of whether they were
21 on the line or in the maintenance office?
22 A Yes.
```

(Ex. 3, Plaintiff's Depo. at 150-51).  Despite Reisdorff's explicit instruction, Plaintiff failed to

stay with the FACTS representatives consistently.  (Ex. 2, Reisdorff Aff. ¶ 15).  Plaintiff would

accompany the FACTS representatives for a short time, then leave.  (Ex. 2, Reisdorff Aff. ¶ 15).

Ultimately, Plaintiff's co-worker, Mike Senn ("Senn"), assumed Plaintiff's

responsibilities.  (Ex. 3, Plaintiff's Depo. at 148-49, 153-54; Ex. 4, Reisdorff's Depo. at 9, 14).

The Cat-B line broke down a second time on May 17, 2011.  (Ex. 18).  Plaintiff knew that the

FACTS system was not functioning properly.  (Ex. 3, Plaintiff's Depo. at 145).  On Friday, May

20, 2011, Scott Hall, president of FACTS, made plans to travel to AmerCable the next day, May

21, 2011, to work on the FACTS system.  (Ex. 2, Reisdorff's Aff. ¶ 18).  Friday evening, Senn

sent an email to several employees, including Plaintiff, stating, "[w]e will be in Saturday evening

to do some work on the line."  (Ex. 19).  Plaintiff admits that he did not come into work at

AmerCable on May 21 or 22.  (Ex. 3, Plaintiff's Depo. at 158).  Instead, Senn worked with the

FACTS representative over the weekend.  (Ex. 3, Plaintiff's Depo. at 162-63).  Plaintiff claims

he did not know that employees were going to be working on the Cat-B line over the weekend.

(Ex. 3, Plaintiff's Depo. at 155).

Plaintiff did not start working with the FACTS representative until he returned to work

on Monday, May 23, 2011.  (Ex. 3, Plaintiff's Depo. at 154).  And then he stood there "looking

at the back of Mike Senn's head."  (Ex. 3, Plaintiff's Depo. at 161).  Incredibly, Plaintiff asked

Reisdorff if he could take vacation to go to Florida that week, even though he knew that there were still issues with the Cat-B line and Hall was still at AmerCable.  (Ex. 3, Plaintiff's Depo. at 159-61).   After receiving Plaintiff's emailed vacation request on May 23, 2011, Reisdorff recommended to Wiggins that the Company terminate Plaintiff's employment.   (Ex. 4, Reisdorff's Depo. at 18-19).  Wiggins discussed the situation with counsel and made the decision to terminate Plaintiff's employment.  (Ex. 5, Wiggins's Depo. at 61-63).

AmerCable terminated Plaintiff's employment for disregarding the instructions of his supervisor and failing to perform his job duties.  The Eighth Circuit has repeatedly held that insubordination, or failure to follow a supervisor's directions, is a legitimate, nondiscriminatory reason for termination.  *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999); *Miner v. Bi-State Dev. Agency*, 943 F.2d 912, 913-14 (8th Cir. 1991).  Reisdorff made it clear to Plaintiff that his job required him to accompany the FACTS representatives at all times and provide them with information while they worked on the software.  (Ex. 3, Plaintiff's Depo. at 150-51).  AmerCable had the legitimate expectation that Plaintiff would follow instructions in the performance of his duties.  *Miner*, 943 F.2d at 913-14.  When Plaintiff's performance did not meet this expectation, AmerCable terminated his employment.   *Id.*; *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 470-71 (8th Cir. 2011) (employee lawfully terminated for failing to comply with company's performance goals).

### b. Plaintiff cannot show Defendants' legitimate, non-discriminatory reason for terminating his employment is pretextual.

Since Defendants have articulated a legitimate, non-discriminatory reason for terminating Plaintiff, the burden of production shifts back to Plaintiff to demonstrate that Defendants' non-discriminatory reason is pretexual.  *Kiel*, 169 F.3d at 1135.  To establish a fact issue on pretext, a plaintiff must present evidence that (1) creates a factual dispute as to whether the employer's

proffered reasons for taking adverse employment action are pretextual; and (2) allows a reasonable jury to infer that the employer's action was motivated by a discriminatory animus. *See Wilking v. County of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998).  An employee's attempt to prove pretext or actual discrimination requires more substantial evidence than the employee's attempt to establish his prima facie case.  *Stuart v. General Motors Corp.*, 217 F.3d 621, 635-36 (8th Cir. 2000).  A plaintiff may show pretext, for example, by showing that an employer: (1) failed to follow its own policies; (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision.  *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).   Courts also consider the temporal proximity of the protected activity and the decision to terminate, although courts hesitate to find pretext on this basis alone.  *See Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir. 2001).  Plaintiff's evidence does not come close to satisfying his pretext burden.

As an initial matter, Plaintiff may disagree with Reisdorff's assessment of his performance, but an employee's subjective assessment of his own performance is insufficient to create a fact issue on summary judgment.  *Brooks v. Ameren*, 345 F.3d 986, 988 (8th Cir. 2002).  Rather, the relevant inquiry is whether Defendants believed he was guilty of the conduct justifying discharge.  *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000).  Defendants have shown they believed Plaintiff did not follow Reisdorff's instructions or perform his job duties, which Plaintiff cannot dispute.

Nor can Plaintiff show that similarly situated employees were treated more favorably, as explained above.    (Ex. 3, Plaintiff's Depo. at 194-195, 207-208).  Similarly, the temporal proximity between Plaintiff's May 25, 2011 email and his discharge on May 31, 2011 does not create any fact issue.  AmerCable and Wiggins had been aware of Plaintiff's alleged disability

and accommodated him since August 2010, *over nine months* before his termination.  *See Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir.1999) (four months between protected activity and adverse action weakens inference of retaliation).  Further, Defendants have stated a legitimate, non-discriminatory reason explaining the timing of Plaintiff's termination—namely, Plaintiff requested vacation on May 23, 2011 <u>after</u> he failed to follow Reisdorff's instructions and perform his job duties even though he knew FACTS was his *primary* responsibility, the CAT-B line was shut down and it was imperative to get it up and running, and Reisdorff had instructed him to shadow the FACTS representatives.  Thus, the timing between his May 25 email and his termination does not create an inference of discrimination or retaliation.  *Mathews v. Trilogy Commc'ns, Inc.*, 143 F.3d 1160, 1167 (8th Cir. 1998) (finding no retaliation where employer's legitimate, non-discriminatory reason accounted for the timing of plaintiff's termination).  And, as explained above, that the Company was unable to notify Plaintiff of its decision until May 31, 2011 does not create a fact issue.  *Stewart*, 481 F.3d at 1044.

In the end, Plaintiff has not presented, and cannot do so, any evidence showing that Defendants' legitimate, non-discriminatory reasons for terminating his employment were pretextual.  Thus, Defendants are entitled to summary judgment on Plaintiff's ADA/ACRA discrimination and retaliation claims for this reason.  *Sprenger*, 253 F.3d at 1113-14 (summary judgment granted on discrimination claim where plaintiff failed to raise a genuine question of material fact as to pretext); *Sherman v. Runyon*, 235 F.3d 406, 410 (8th Cir. 2000) (summary judgment granted on retaliation claim where plaintiff failed to show employer's legitimate, non-discriminatory reason was pretextual).

**B.      Plaintiff Cannot Succeed on His FMLA Claims.**

Plaintiff's FMLA claims suffer the same fate as his ADA/ACRA claims.  The FMLA contains two broad types of claims: "(1) 'interference' or '(a)(1)' claims in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA, and (2) 'retaliation' or '(a)(2)' claims in which the employee alleges that the employer discriminated against him for exercising his FMLA rights." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008).   An interference claim under 42 U.S.C. § 2615(a)(1) occurs where an employer refuses to authorize leave under the FMLA or takes other action to avoid its responsibilities under the Act. *Pulczinski v. Trinity Structural Towers Inc*., 691 F.3d 996 (8th Cir. 2012).  The Eighth Circuit refers to these claims, where an employee claims the denial of a benefit to which he is entitled under the statute, as "entitlement" claims. *Id.*

Under a retaliation claim, an employee claims that "the employer… t[ook] adverse action against the employee" for "oppos[ing] any practice made unlawful under the FMLA." *Id*. at 1006.  The Eighth Circuit actually recognizes a third type of claim as well, a discrimination claim, which arises when an employer takes adverse action against an employee because the employee exercises rights to which he is entitled under the FMLA.  *Id*.  An employee making this type of claim must prove that the employer was motivated by the employee's exercise of rights under the FMLA.  *Sisk v. Picture People, Inc*., 669 F.3d 896, 900 (8th Cir. 2012).  A plaintiff's FMLA discrimination and retaliation claims must be dismissed if the employer can prove a legitimate, non-discriminatory reason for its actions.  *Pulczinski*, 691 F.3d at 1007.

**1.      Plaintiff Cannot State an FMLA Interference Claim.**

Plaintiff alleges in his Complaint that "Defendant interfered with the use of Plaintiff's FMLA leave and discouraged its use by creating a hostile work environment and terminating him

in retaliation for requesting FMLA leave."   (Plaintiff's Complaint at ¶ 17 [Docket No. 3]).

Plaintiff's interference claim fails for at least two reasons.  First, no relief exists under the FMLA

for a hostile work environment, nor is it one of the three FMLA claims recognized by the Eighth

Circuit.[3]  *Pulczinski*, 691 F.3d at 1005; *Lowenstein v. Catholic Health East*, 820 F. Supp. 2d 639,

643 (E.D. Pa. 2011) (dismissing plaintiff's hostile work environment claim under the FMLA

where even plaintiff conceded it was not viable).

Second, Plaintiff cannot state an interference claim because Plaintiff does not—and

cannot—allege that Defendants denied him leave under the FMLA, which is the basis for an

interference or "entitlement claim."  *Pulczinski*, 691 F.3d at 1007.  To the contrary, Plaintiff

<u>admits</u> that AmerCable granted him leave when he asked for it:

> 18 Q Well, they allowed you to take leave, right?
> 19 A Yes, when I put in for the leave.

(Ex. 3, Plaintiff's Depo. at 182).  Plaintiff further admits that "[he] didn't apply for the leave" he

took from May 25 through May 31, 2011, yet it was granted.  (Ex. 3, Plaintiff's Depo. at 190).

Because Plaintiff cannot point to a leave request that was denied, summary judgment is

warranted on Plaintiff's FMLA interference claim against Defendants.

---

[3] Even if this were a viable claim, Plaintiff cannot establish a prima facie claim for a hostile work environment, which requires him to show that (1) he is a member of the protected class, (2) he was subject to unwelcome harassment, (3) the harassment resulted from his membership in the protected class, and (4) the harassment was severe enough to affect the terms, conditions, or privileges of his employment.  *Shaver v. Ind. Stave Co.*, 350 F.3d 716, 720 (8th Cir. 2003) (listing the elements of an ADA hostile work environment claims).  Plaintiff alleges that Reisdorff harassed him, but both Plaintiff and Reisdorff testified that Reisdorff had no knowledge of Plaintiff's condition or his use of FMLA leave, so Plaintiff cannot show that the alleged harassment resulted from Plaintiff taking FMLA leave.  (Plaintiff's Depo. at 91, 94, 186-87; Reisdorff's Depo. at 15-16, 28).  Plaintiff further admits that no one at AmerCable ever said anything to him about his disability because only HR knew about his problem, and the Defendants never denied him any leave.  (Plaintiff's Depo. at 131, 182, 188).  Therefore, Plaintiff's FMLA hostile work environment claim fails as a matter of law.  *See Schoffstall v. Henderson*, 223 F.3d 818, 828 (8th Cir. 2000) (hostile work environment claim failed where harassment was not based on plaintiff's protected group status).

    **2.**    **Plaintiff's FMLA Discrimination and Retaliation Claims Fail Because Plaintiff Cannot State a Prima Facie Case or Rebut Defendants' Legitimate, Non-Discriminatory Reason for Plaintiff's Termination.**

Based on his deposition testimony, it appears that Plaintiff alleges FMLA discrimination and retaliation claims rather than interference (as alleged in his Complaint) because he contends Defendants took adverse action against him for exercising his rights under the FMLA. When asked in his deposition if he has asserted an FMLA claim in this lawsuit, he answered, "For retaliation, yes." (Ex. 3, Plaintiff's Depo. at 192). When asked if there is any other claim he is making against Defendants relating to the FMLA, he again referenced only his claim for retaliation. (Ex. 3, Plaintiff's Depo. at 196-97).

To establish a prima facie case of FMLA discrimination or retaliation, a plaintiff must show that: (1) he engaged in activity protected under the Act; (2) he suffered a materially adverse employment action; and (3) a causal connection existed between the plaintiff's action and the adverse employment action. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 754 (8th Cir. 2011) (listing elements of FMLA discrimination claim); *Wierman v. Casey's General Stores*, 638 F.3d 984, 999 (8th Cir. 2011) (listing elements of FMLA retaliation claim).

As a matter of law, Plaintiff cannot establish a causal connection between the adverse action and the protected activity. Plaintiff's FMLA discrimination/retaliation claim fails for the same reasons as his ADA/ACRA retaliation claim. *See* pages 17 - 22. Reisdorff had no knowledge of Plaintiff's medical condition, his FMLA leave, or his alleged protected activity when he recommended that the Company terminate Plaintiff's employment. Therefore, Plaintiff cannot establish a prima facie case of FMLA discrimination or retaliation. *Sullivan-Robinson v. Ark. Parole Bd.*, No. 4:11CV00140, 2010 U.S. Dist. LEXIS 154621, at *30-31 (E.D. Ark. Oct. 29, 2012) (finding no retaliation where defendant was not aware of plaintiff's FMLA complaint); *Reach v. AlliedSignal Inc.*, 184 F. Supp. 2d 932, 942 (W.D. Mo. 2000) (plaintiff's retaliation

claim failed where manager who discharged employee did not know of employee's medical condition or his FMLA leave).

Even assuming Plaintiff could establish his prima facie case, Defendants terminated Plaintiff's employment for legitimate, non-discriminatory reasons. *Bradley v. Little Rock Wastewater Utility*, No. 12-1405, 2013 U.S. App. LEXIS 3076, at *7 (8th Cir. Feb. 14, 2013) (finding no FMLA retaliation where plaintiff failed to follow supervisor's instructions and acted insubordinate); *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 973, 981 (8th Cir. 2005) (discharge was not unlawful where based on performance problems not FMLA); *Putman v. Unity Health System*, 348 F.3d 732, 738 (8th Cir. 2003) (refusal to obey a direct order of a supervisor is a legitimate, non-discriminatory reason for termination); *Sullivan-Robinson,* No. 4:11CV00140, 2010 U.S. Dist. LEXIS 154621, at *24 (no FMLA retaliation where plaintiff was terminated for refusing to follow directives of her supervisor); *Henson v. Hawker Beechcraft Corp.*, No. 4:09CV00440, 2010 U.S. Dist. LEXIS 81535, at *21 (E.D. Ark. 2010) (poor performance is a legitimate, non-discriminatory reason for termination in FMLA context).

Finally, Plaintiff cannot demonstrate that Defendants' reasons for terminating his employment were pretextual. While temporal proximity may establish a causal connection, alone it is rarely enough to show pretext. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832-34 (8th Cir. 2002). That Plaintiff was terminated shortly after sending his May 25 email is irrelevant because Reisdorff made his recommendation to terminate Plaintiff before Plaintiff engaged in this alleged protected activity. *Id.* (explanation of close timing hurt rather than helped plaintiff's case where employer was concerned about problem before employee engaged in protected activity); *see also Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012) (granting summary judgment for employer where decision to discharge employee was

made the day before she requested FMLA leave but discharge was delayed until day after). Additionally, Plaintiff's termination did not occur until *over nine months* after he returned from his second use of FMLA leave.  *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1003 (8th Cir. 2005) (six-month lapse between plaintiff's return from FMLA leave and the adverse employment action diluted any inference of causal connection); *Brown v. City of Jacksonville*, No. 4:10CV001637, 2012 U.S. Dist. LEXIS 23454, at *22 (E.D. Ark. 2012) (finding no causal connection where plaintiff was terminated eight months after her return from FMLA leave).  Plaintiff's unchallenged use of FMLA on two other occasions is further support that Plaintiff's employment was terminated only because he failed to follow his supervisor's instructions and perform his job duties satisfactorily.  *Chappell v. Bilco Co*., 675 F.3d 1110, 1118 (8th Cir. 2012).  Under these circumstances, Plaintiff cannot show pretext based on temporal proximity alone.  Further defeating his claim, Plaintiff cannot show that AmerCable treated him less favorably than those similarly situated who did not take FMLA leave. (Plaintiff's Depo. at 207-208).

Since Plaintiff cannot state a prima facie case of FMLA discrimination or retaliation, or rebut Defendants' legitimate, non-discriminatory reason for terminating his employment, summary judgment is warranted on Plaintiff's FMLA claims in their entirety.

## IV.    CONCLUSION

In sum, Defendants are entitled to summary judgment on Plaintiff's ADA, ACRA, and FMLA claims in their entirety for several reasons.  Although Plaintiff alleges he was treated disparately because of his alleged disability, he has no presented any such evidence.  He cannot identify a single similarly situated employee who was treated more favorably.  Plaintiff has also failed to present evidence demonstrating that he requested a reasonable accommodation or that

Defendants denied him one.   Plaintiff's ADA/ACRA retaliation claim fails because it is undisputed that the recommendation to terminate Plaintiff came from his manager, who had no knowledge of Plaintiff's alleged disability or his alleged request for an accommodation, and it was based on conduct that occurred before his alleged protected activity.   Further, Defendants terminated Plaintiff for a legitimate, non-discriminatory reason that Plaintiff cannot rebut. For the same reasons, Plaintiff's FMLA discrimination and retaliation claims must also fail.   Finally, because Plaintiff cannot show he was denied leave under the FMLA, his interference claim fails as well.   Therefore, Defendants request that the Court grant summary judgment on all of Plaintiff's ADA, ACRA, and FMLA claims alleged against Defendants, and grant Defendants all other relief to which they may be entitled.

Respectfully submitted,

/s/ Melissa M. Goodman
Dale S. Smart
State Bar No. 2006239
SMART & STONE, PLLC
315 E. Main Street
El Dorado, AR 71730
Telephone:  (870) 862-5565

Melissa M. Goodman
Texas State Bar No. 00790648
Arrissa K. Meyer
Texas State Bar No. 24060954
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:  214.651.5000

**ATTORNEYS FOR DEFENDANTS
ERICK WIGGINS, BILL REISDORFF,
AMERCABLE INCORPORATED
AND NEXANS INC.**

- 28 -

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing instrument has been served upon Plaintiff's attorney of record on this the 27th day of March, 2013, pursuant to the Court's ECF filing system and the Federal Rules of Civil Procedure.

Luther Oneal Sutter
310 West Conway St.
Benton, AR 72015

s/ Melissa M. Goodman_____