UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CURT TOMLINSON                                                                                    PLAINTIFF

VS.                                              CASE NO. 12-1050

ERICK WIGGINS, BILL REISDORFF,
AMERCABLE, INC.
AND NEXANS                                                                                     DEFENDANTS

**BRIEF IN SUPPORT OF PLAINTIFF'S
RESPONSE TO MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, by and through counsel, Sutter & Gillham, P.L.L.C., and for this Brief states:

**INTRODUCTION**

This is a failure to accommodate claim, an ADA and ACRA discrimination claim, and a retaliation an interference claim under the FMLA, ACRA and the ADA. On the disability and FMLA retaliation claims, viewing the facts in the light most favorable to him, Defendants discussed terminated Plaintiff while he was on FMLA leave. Reisdorf testified that he recommended to Wiggins, the decisionmaker, that Plaintiff be terminated on 5/23. Ex 1 at P. 18. The email requesting accommodation was sent on 5/25. Ex 21 to Defendant's Motion. Then Plaintiff was terminated on Risedorf's next recommendation on 5/25. Ex 1 at P. 20. Several months later, Plaintiff engaged in protected activity by disclosing his suffered from anxiety, was unable to drive because of his new medication, and requested a transfer. This was a request for an accommodation. Plaintiff was terminated two days after he requested this accommodation. Plaintiff was brought into a room with Wiggins and Reissdorff. Wiggins told Plaintiff that his job was being done away with through no fault of my own, and that Defendants would not oppose unemployment. Of course, Defendants now claim Plaintiff was fired for performance. But there is a five step process for discipline, and Defendants never engaged in that process. Thus, shifting reasons, temporal proximity, and policy violations support pretext.

1

Finally, whether analyzed as a disparate treatment or failure to accommodate claim, the Motion on the ADA claims should be denied. There is a factual dispute about the legitimate non-discriminatory reason that precludes further inquiry into pretext.

## **Standard of Review**

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 585, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal quotation marks and citation omitted); see Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (emphasis added); see Woods v. DaimlerChrysler Corp., 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is material when it "'might affect the outcome of the suit under the governing law.'" Johnson v. Crooks, 326 F.3d 995, 1005 (8th Cir. 2003)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Thus, "the substantive law will identify which facts are material." Anderson, 477 U.S. at 248. An issue of material fact is genuine if it has a real basis in the record, Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," Woods, 409 F.3d at 990 (quoting Anderson, 477 U.S. at 248); see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir.

2005)(stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," Hartnagel, 953 F.2d at 395 (citing Celotex, 477 U.S. at 323, and demonstrating that it is entitled to judgment according to law. See Celotex, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Mosley v. City of Northwoods, Mo., 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained in Torgerson v. City of Rochester, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (en banc).

The Eighth Circuit Court of Appeals recognized in a number of panel decisions that summary judgment is "disfavored" or should be used "sparingly" in employment discrimination cases. See id., at 1043 (collecting such cases in an Appendix). The rationales for this "employment discrimination exception" were that "discrimination cases often turn on inferences rather than on direct evidence. . . .," E.E.O.C. v. Woodbridge Corp., 263 F.3d 812, 814 (8th Cir. 2001) (en banc) (citing Crawford, 37 F.3d at 1341; Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999)), and that "intent" is generally a central issue in employment discrimination cases. See, e.g., Christopher v. Adam's Mark Hotels, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing Gill v. Reorganized Sch. Dist. R-6, Festus, Mo., 32 F.3d 376, 378 (8th Cir. 1994)); see Simpson v. Des Moines Water Works, 425 F.3d 538, 542 (8th Cir. 2005) (noting summary judgment is disfavored in employment discrimination cases because they are "'inherently fact-based.'" (quoting Mayer v. Nextel W. Corp., 318 F.3d 803, 806 (8th Cir. 2003))). I had assumed that this same caution in granting summary judgment would apply to employment retaliation cases. See, e.g., Martinez v. Cole Sewell Corp., 233 F. Supp. 2d 1097, 1122 (N.D. Iowa 2002) ("A claim of retaliation under Title VII that is subject to the McDonnell Douglas burden-shifting analysis depends just as completely on the inferences to be drawn from the evidence as a disparate

treatment or hostile environment claim. Therefore, the court concludes that summary judgment on such a claim should be granted just as seldom and sparingly as it is on any other employment discrimination claim." (internal citations omitted)).

On the other hand, the Supreme Court recognized that, even in employment discrimination cases, "'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). In its en banc decision in Torgerson, the Eighth [25] Circuit Court of Appeals expressly rejected the notion that summary judgment in employment discrimination cases is considered under a separate standard, citing Reeves and Celotex. Instead, the court held as follows:

Because summary judgment is not disfavored and is designed for "every action," panel statements to the contrary are unauthorized and should not be followed. There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial.

Torgerson, 643 F.3d at 1043.

However, stating the legal principles of summary judgment in employment discrimination cases is a simple task. Truckenmiller v. Burgess Health Ctr., 814 F. Supp. 2d 894, 2011 U.S. Dist. LEXIS 113318 (N.D. Iowa 2011).

Applying those principles to the paper record that forms the judicial crucible that decides which plaintiffs may proceed to trial and which get dismissed is far more daunting. *Id.* Missing in the standard incantation of summary judgment principles is the role of experience. Justice Oliver Wendell Holmes wrote, "The life of the law has not been logic; it has been experience." Oliver Wendell Holmes, The Common Law 1 (1881). Id.  Thus, experience teaches that thoughtful deliberation of summary judgment in employment discrimination cases is grounded in the consideration of each case through a lens filtered by the following observations. Id.

Employment discrimination and retaliation, except in the rarest cases, is difficult to prove. Id. It is perhaps more difficult to prove today—more than seventy years after the passage of the FLSA, and more than forty years after the passage of the EPA, …….—than during the earlier evolution of these and other federal antidiscrimination and anti-retaliation statutes. Id.

4

Today's employers, even those with only a scintilla of sophistication, will neither admit discriminatory or retaliatory intent, nor leave a well-developed trail demonstrating it. Id. citing., Riordan v. Kempiners, 831 F.2d 690, 697-98 (7th Cir. 1987). Indeed, the Fifth Circuit Court of Appeals recognized more than thirty-five years ago, that "[a]s patently discriminatory practices become outlawed, those employers bent on pursuing a general policy declared illegal by Congressional mandate will undoubtedly devise more sophisticated methods to perpetuate discrimination among employees." Rogers v. EEOC, 454 F.2d 234, 239 (5th Cir. 1971) (later relied on by the Supreme Court in Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65-67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986), as one of the principal authorities supporting recognition of a cause of action for hostile environment sexual harassment under Title VII).  But here  there is evidence Defendant has implemented to a discriminatory practice, i.e. requiring no restrictions to return to work and commenting on Plaintiff's disability rating. RSP SUF 28 and 29.

The *Truckenmiller* court's experience suggested the truth of that observation:

Because adverse employment actions almost always involve a high degree of discretion, and most plaintiffs in employment discrimination and retaliation cases are at will, it is a simple task for employers to concoct plausible reasons for virtually any adverse employment action ranging from failure to hire to discharge. This is especially true, because the very best workers are seldom employment discrimination and retaliation plaintiffs due to sheer economics: Because the economic costs to the employer for discrimination or retaliation are proportional to the caliber of the employee, discrimination or retaliation against the best employees is the least cost effective. See, e.g., id. Rather, discrimination and retaliation plaintiffs  tend to be those average or below-average workers—equally protected by federal statutes prohibiting employment discrimination and retaliation—for whom plausible rationales for adverse employment actions are readily fabricated by employers with even a meager imagination. See, e.g., id.

Plaintiff urges this Court to consider and apply the above.

**A.** Plaintiff is person with a disability.

Sutton v. United Airlines, Inc., 527 U.S. 471, 499, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999) is no longer good law in light of the ADAAA. Plaintiff has alleged he is a person with a disability, as that term is defined by the ADA. The ADA defines an individual as disabled if he: (1) has "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff argues that his anxiety and mental illness is an impairment that substantially limits his ability to lift and grip, and that he thus has adequately alleged a disability under the ADA. Ex A, Plaintiff's Affidavit.

"Ultimately, whether an individual is substantially limited as to a major life activity is a question of fact." Mills v. Temple Univ.,    F. Supp. 2d   , 2012 U.S. Dist. LEXIS 47563, 2012 WL 1122888, *7 (E.D. Pa. 2012). Before Congress amended the ADA in 2008, courts construed the Act strictly, finding that an individual was "substantially limited" only if he had "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 185, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002). In another leading ADA case, the Supreme Court held that the degree of limitation caused by an individual's impairment should be determined with reference to the ameliorative effects of mitigating measures. Sutton v. United Airlines, Inc., 527 U.S. 471, 499, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999).

On January 1, 2009, however, Congress passed the ADA Amendments Act of 2008 ("ADAAA"), rejecting Toyota and Sutton. Pub. L. No. 110-325, § 2(b)(1)-(6), 122 Stat. 3553 (2008). With the ADAAA, Congress explicitly lowered the standard for "substantially limits,"

noting that "lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities." Pub. L. No. 110-325, § 2(a)(6), 122 Stat. at 3553. Congress declared that "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their [8] obligations," and that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Pub. L. No. 110-325, § 2(b)(5), 122 Stat. at 3554.

The post-ADAAA regulations promulgated by the EEOC similarly caution that the term "substantially limits": is "not meant to be a demanding standard"; shall be construed broadly in favor of expansive coverage, to the "maximum extent permitted by the ADA"; and shall "be applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(1)(i),(iv). While noting that "not every impairment will constitute a disability within the meaning of [the ADA]," the regulations make clear that "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). Rather, the relevant inquiry is whether a disability "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." Id. While this inquiry "usually will not require scientific, medical, or statistical analysis," such evidence may be presented in order "to make such a comparison where appropriate." 29 C.F.R. § 1630.2(j)(v). Thus, any reliance on Sutton is misplaced.

"Few courts have had occasion to consider the effects of the ADAAA. Those that have, apply it broadly to encompass disabilities that previously might have been excluded." Harty v. City of Sanford, No. 11-cv-1041, 2012 U.S. Dist. LEXIS 111121, 2012 WL 3243282, *5 (M.D. Fla. Aug. 8, 2012). Of particular relevance here, in light of the new standards outlined in the

7

ADAAA and its implementing regulations, courts have declined to dismiss, under Rule 12(b)(6), ADA claims for failure to allege facts that, if proven, would establish an impairment that "substantially limits" a major life activity. See Lapier v. Prince George's County, Md., No. 10-CV-2851, 2012 U.S. Dist. LEXIS 59496, 2012 WL 1552780, *7-8 (D. Md. Apr. 27, 2012)(holding that plaintiff's allegations of a blood disorder that caused decreased oxygen in his blood were sufficient to state a claim of a disability that substantially limited his major life activities); Johnson v. Farmers Ins. Exch., No. CIV-11-963, 2012 U.S. Dist. LEXIS 3943, 2012 WL 95387, *1 (W.D. Okla. Jan. 12, 2012)(holding that, under the broader definition of disability set forth in the ADAAA, Plaintiff's allegations that she suffered from sleep apnea were sufficient to state a claim that she had a disability that substantially limited a major life activity); Coffman v. Robert J. Young Co., Inc., No. 3:10-1052, 2011 U.S. Dist. LEXIS 60007, 2011 WL 2174465 (M.D. Tenn. June 1, 2011)(recommending that district court deny motion to dismiss, as plaintiff sufficiently pleaded that she was an individual with a disability within the meaning of the ADA where she alleged that she suffered serious injuries that required, after a six-month medical leave, lifting restrictions and limited motions affecting her ability to work), report and recommendation adopted, No. 3:10-1052, 2011 U.S. Dist. LEXIS 63834, 2011 WL 2416745 (M.D. Tenn. June 14, 2011); see also Farina v. Branford Board of Educ., No. 09-CV-49, 2010 U.S. Dist. LEXIS 99730, 2010 WL 3829160, *11 (D. Conn. Sept. 23, 2010) (stating that, in light of the fact that the ADAAA lowered the threshold requirement to establish a disability, and specifically included lifting as a major life activity, "it is possible that even a relatively minor lifting restriction could qualify as a disability within the statute"), aff'd, 458 F. App'x 13 (2d Cir. 2011).

Here, Plaintiff has testified about the effects of his mental impairments. Ex A. Plaintiff's Affidavit. This Court should recognize the mandate to expand ADA coverage that was codified under the ADA Amendments Act of 2008 ("ADAAA"). In enacting the ADAAA, Congress expressly rejected the standard that had been embraced by courts stating that "the terms

'substantially' and 'major' in the definition of the ADA 'need to be interpreted strictly to create a demanding standard for qualifying as disabled.'" Pub. L. 110-325 § 2(b)(4) . Congress stated that "the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." Id. at § 2(b)(5). Thus, in this record there is sufficient evidence to show Plaintiff has a disability under the ADAA. See Estate of Murray v. UHS of Fairmount, Inc., Civ. A. No. 10-2561, 2011 U.S. Dist. LEXIS 130199, 2011 WL 5449364, *8 (E.D. Pa. Nov. 10, 2011) (acknowledging an "incredibly sparse" record as to whether the employee's impairment substantially limited her major life activities but declining to grant summary judgment in light of the ADAAA).  Proof of disability is not intended to be rigorous under the ADAAA.  Summary judgment should be denied on this issue.

### B. Otherwise Qualified for the Job

An individual is otherwise qualified if she, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  Here, Plaintiff was never disciplined until the termination, and he was regarded as qualified before the termination.  But, in any event, there are two distinct claims under the ADA, although both are included definitionally in the term "discriminate."  See 42 USC 12112(a).   One is disparate treatment;  the other is failure to accommodate.  Because "[t]he key element" in a disparate treatment disability discrimination claim is "discriminatory intent," see Peebles v. Potter, 354 F.3d 761, 765 (8th Cir. 2004), a disparate treatment claim under the ADA that is based on circumstantial evidence is analyzed using the McDonnell Douglas burden-shifting framework. Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1044 (8th Cir. 2005)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). That framework requires the plaintiff to develop a prima facie case of disparate treatment. Id. If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to proffer a legitimate, nondiscriminatory reason for adverse employment

action, and if it does, then the plaintiff must show that the proffered reason is a pretext for disability discrimination. Id.  But the court considers claims for failure to accommodate using "a modified burden-shifting analysis, **because discriminatory intent** is not at issue." Mershon v. St. Louis Univ., 442 F.3d 1069, 1074 (8th Cir. 2006)(emphasis added).

Here, on the disparate treatment claim, Wiggins told Plaintiff that his job was being done away with through no fault of Plaintiff's, and that they would not oppose unemployment.  They now claim Plaintiff was fired for performance, however, there is a five step process for discipline, and they never engaged in that process.  There is also a comparator.  Scott LNU, was Cat B downstairs operator, was suspended twice, and not fired for talking back to a supervisor.  Plaintiffs knows this because a manager, Thomas Waters, told him about it.  Plaintiff never talked back to anybody.  Thus, there are shifting reasons or a failure to follow policy.  An employee may prove pretext by demonstrating that: (1) the employer's proffered reason has no basis in fact, (2) that the employee received a favorable review shortly before he was terminated, (3) that similarly situated employees who did not engage in the protected activity were treated more leniently, (4) that the employer changed its explanation for why it fired the employee, or (5) that the employer deviated from its policies.  *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir.2006).  All of these factors are in play here.

### C. Adverse Job Action Wiggins/Reisdorf.

Of course, the failure to engage in an interactive process and the termination are both adverse job actions.  Defendant claims on one hand that Reisdorf had no ability to terminate the Plaintiff, but then argues his lack of knowledge insulates Wiggins and Amercable from liability.  Aside from being illogicial, it is Wiggins who apparently made the decision, although Reisdorf should be held liable for aiding and abetting a tort.  Thus, summary judgment should not be granted on this basis.

**D. Plaintiff's prima facie case on the ADA disparate treatment claim**

Here, there is evidence that Defendant refused to discuss an accommodation, the request for a transfer and retaliated against Plaintiff for identifying himself as suffering from anxiety and unable to drive because of new medication. As the Eighth Circuit Court of Appeals has explained,

> To establish a prima facie case [of disparate treatment] under the ADA, a plaintiff must show "(1) that [he] has a disability within the meaning of the ADA; (2) that ]he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) that he suffered an adverse employment action due to a disability." Chalfant [v. Titan Distrib., Inc.], 475 F.3d [982,] 988 [(8th Cir. 2007)] (internal quotations and citation omitted).

Tusing, 639 F.3d at 518, 2011 U.S. App. LEXIS 7436 at *19-20, 2011 WL 1364477 at *6. In a few lines, Defendant asserts reassignment is an accommodation of last resort. But there is no authority that allows an employer to ignore an accommodation request. Burchett v. Target Corp., 340 F.3d 510, 2003 U.S. App. LEXIS 16592, 14 Am. Disabilities Cas. (BNA) 1296, Accom. Disabilities Dec. (CCH) 11-025 (8th Cir. Minn. 2003). This is precisely what happened here.

Defendant could, but incorrectly, argue Plaintiff cannot survive a McDonnell Douglas analysis because: (1)he cannot establish that he is qualified for the position; (2)he cannot meet the intent element of his prima facie case (causation/replacement/comparator/evidence of pretext); and (3) plaintiff cannot establish pretext. The qualification argument fails because: (a) Plaintiff can establish qualification through evidence of performance of the job; and (b) because Defendant is improperly trying to require him to disprove their legitimate, non-discriminatory reason for the termination, in the prima facie case. As to the issues of intent, Plaintiff can

establish this through timing, comparators, closer supervision, falsehoods and shifting explanations. Thus, Defendant's motion for summary judgment should be denied.

### E. Plaintiff's prima facie case on the failure to accommodate claim

An employer violates the ADA if the employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). The ADA's regulations state: "To determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). The EEOC's interpretive guidelines provide: "Once a qualified individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. § 1630, App. § 1630.9.

The court considers claims for failure to accommodate using "a modified burden-shifting analysis, **because discriminatory intent** is not at issue." Mershon v. St. Louis Univ., 442 F.3d 1069, 1074 (8th Cir. 2006) (citation and internal quotation marks omitted)(emphasis added). Plaintiff bears the initial burden "only to show that the requested accommodation is reasonable on its face, i.e., ordinarily or in the run of cases." Peebles v. Potter, 354 F.3d 761, 768 (8th Cir. 2004) (citation and internal quotation marks omitted). Upon such a showing, the employer is left to "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." Id. Here, there was no response. This is evidence of bad faith.

As to the flexible "informal interactive process" required for the employer and employee to devise a reasonable accommodation, to demonstrate that the employer failed to participate in the process, the employee must prove that "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 951 (8th Cir. 1999). When an employer fails to engage in an interactive process, that is prima facie evidence of bad faith. Ballard, 284 F.3d at 960; Buboltz, 523 F.3d at 870. Here, there were no essential job functions Plaintiff could not perform. A request for leave (the need to leave because of his medication) and transfer is an accommodation. But here there was no response. Hence, there was no interactive process at all.

### G.   Retaliation

Under the FMLA, ADA, state law and the ACRA, Plaintiff had every right to request FMLA leave as accommodation under the ADA. The ADA prohibits discrimination "against any individual because such individual has participated in any act or practice made lawful by [the ADA]." 42 U.S.C. § 12203(a) (1998). The ADA, state law, and the FMLA all prohibit employer retaliation against any employee due to the employee's complaints about discrimination. 42 U.S.C. § 12203(a); 29 USC 2654. To establish a prima facie claim of retaliation, Plaintiff must show that: (1) he engaged in statutorily protected activity; (2) a materially adverse action was taken against him; and (3) the materially adverse action was taken in retaliation for his engaging in protected activity. Stewart v. Indep. Sch. Dist. No. 196, 481 F.3d 1034, 1043 (8th Cir. 2007) (ADA test). Here, there are two adverse actions, the termination and the failure to accommodate, and there is no doubt that Plaintiff engaged in several protected activities, i.e. the request

13

Indeed, the 8th Circuit has held that evidence far less strong than is present here can establish a question for the jury in <u>Smith v. Riceland Foods</u>, 151 F.3d 813, 819-20, 1998 U.S. App. LEXIS 17762, 77 Fair Empl. Prac. Cas. (BNA) 1052, 73 Empl. Prac. Dec. (CCH) P45,478 (8th Cir. Ark. 1998):

> We find that Riceland's position is not supported by Eighth Circuit precedent. This Court has noted that a plaintiff can establish a causal connection between statutorily protected activity and an adverse employment action through circumstantial evidence, such as the timing between the two events. See <u>Reich, 32 F.3d 361, 365 n.4</u>. Moreover, this Court has found that periods of time between statutorily protected activity and adverse employment actions longer than the three-month period in the instant case were sufficient to create an inference of the requisite causal connection. See, e.g., <u>Smith, 109 F.3d at 1266</u>. Finally, we believe that Smith has presented evidence, in addition to the timing between the filing of her charge and her termination, that creates a causal connection between the two events. She presented evidence that management at Riceland confronted her about filing her charge and that other employees who had not filed charges of discrimination were not investigated as closely or punished as severely as she was, even though they had been paid for time spent in the Case Center on days when they had no lesson time. Based upon this evidence, we find that Smith has presented sufficient evidence upon which a jury could reasonably conclude that a causal connection existed between the filing of her charge of discrimination and her termination.

Id. Here, there is protected activity, the request for accommodation, followed by a termination within days. Further, Reisdorf testified Plaintiff had not been performing his job for five months. Ex 1 at P. 18. Where an employer tolerates an undesirable condition for an extended period of time, an employee takes part in protected conduct, and shortly thereafter, the employer takes an adverse action in purported reliance on the long-standing undesirable condition, a reasonable jury can infer that the adverse action is based on the protected conduct. See *Eliserio v. United Steelworkers of America Local 310*, 398 F.3d 1071, 1079-80 (8th Cir. 2005)(stating that when an employer ignored or treated as de minimis five complaints about an employee but took drastic action following a sixth, identical complaint, a reasonable jury could infer that the employer's claim of reliance on the sixth complaint was pretextual and that the employer had acted in retaliation for the employee's intervening protected conduct). The shifting explanations, timing, and lack of discipline all point to retaliation and pretext.

### H. FMLA interference claims

Here, Wiggins knew Plaintiff was depressed and had received FMLA leave. Ex 2 at P. 14 and 15. Plaintiff was an eligible employee. Ex 3, Responses to Requests for Admission. The only question worth debating is if there was appropriate notice. The email attached to Defendants' papers as Exhibit 21 and Plaintiff's Affidavit demonstrate there was appropriate notice. Plaintiff identified the condition, anxiety, identified prescription medication, and said he was unable to drive. This alone was sufficient notice, since an inability to drive is certainly an inability to work around dangerous machinery and new prescription requires a physician visit. But certainly in light of the previous grant of FMLA leave. Ex 2 at P. 15. Byrne v. Avon Products, Inc., 328 F.3d 379 (7th Cir. 2003) says that that a qualifying employee's unusual workplace behavior can, itself, constitute notice to the employer that FMLA leave could be necessary. Byrne, 328 F.3d at 381-82. There was far more notice and information here.

Respectfully submitted

By: /s/ **Luther O Sutter**
Luther Oneal Sutter, Ark. Bar No. 95031
SUTTER & GILLHAM, P.L.L.C.
Attorneys for Plaintiff
P.O. Box 2012
Benton, AR 72018
(501) 315-1910/(501) 315-1916 (Fax)

### CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to counsel for the Defendant:

Melissa M. Goodman
Arrissa Meyer
Haynes and Boone LLP
2323 Victory Ave., Suite 700
Dallas, TX 75219
Melissa.goodman@haynesboone.com
Arrissa.Meyer@haynesboone.com

Dale Smart
Vickery & Carroll

15

315 E. Main St.
P. O. Box 2037
El Dorado, AR  71730
dsmart@southarklaw.com

                                      */s/ Luther Oneal Sutter*
                                      Luther Oneal Sutter